IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGE CASILLAS | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-06-CV-1894-M |
| NATHANIEL QUARTERMAN, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Petitioner George Casillas, appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of aggravated assault with a deadly weapon. Punishment, enhanced by two prior felony convictions, was assessed at life imprisonment. His conviction and sentence were affirmed on direct appeal. *Casillas v. State*, No. 05-04-00310-CR, 2005 WL 906134 (Tex. App.--Dallas, Apr. 20, 2005, no pet.). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte Casillas*, No. 65,326-01 (Tex. Crim. App. Sept. 27, 2006). Having exhausted his state remedies, petitioner now seeks federal habeas relief.

-1-

II.

Petitioner raises five broad issues in nine grounds for relief. Succinctly stated, petitioner contends that: (1) the prosecutor made an improper jury argument; (2) hearsay evidence was used to bolster the state's case against him; (3) the jury charge was defective; (4) he received ineffective assistance of counsel; and (5) the state habeas judge failed to conduct an evidentiary hearing and should have recused himself.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter*

-2-

*v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004).  Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### B.

Petitioner first contends that the prosecutor made an improper jury argument by insinuating that a key defense witness, Michael Elizardo, gave false testimony at trial because he feared for his life.  In order to obtain federal habeas relief, petitioner must show that the argument was so prejudicial that it deprived him of a fair trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 2907 (1986).  A trial is fundamentally unfair if the petitioner would not have been convicted but for the prosecutor's persistent and improper remarks. *See Rushing v. Butler*, 868 F.2d 800, 807 (5th Cir. 1989).

Petitioner was charged with cutting and stabbing Juan Flores with a knife or scissors. (*See* St. Hab. Tr. at 2).  The unprovoked attack occurred during the early morning hours of June 30, 2002,

-3-

in front of Michael Elizardo's house. (SF-II at 117, 118-21). According to Flores, a man approached

him from behind and said, "[Y]ou know me? My name's George Casillas." (*Id.* at 122). When

Flores said he did not know the man, he was hit in the face and fell to the ground. (*Id.* at 122-23).

The man then stabbed Flores in the back four times with a sharp object. (*Id*. at 125).

Joe McNulty, a Dallas police detective, testified that he interviewed Elizardo three or four

weeks after the assault. (SF-III at 18). Elizardo positively identified petitioner as the assailant from

a six-person photographic spread, signed the picture of petitioner, and told McNulty that he saved

Flores' life by stopping the attack. (*Id.* at 19-20, 29). When asked by defense counsel if he was

certain that Elizardo claimed to have saved the victim's life, McNulty responded:

> Yes, sir. And said he was rolling around in the street with him; that
> he said he saw him, and his mother saw also, and wanted me to keep
> his mother out of it. Said that he saw George Casillas punching him
> several times while he was down in the street, but he didn't realize he
> was actually stabbing him. He said if he didn't stop it--I remember
> his exact words--if he didn't stop it, that--you know, that he would be
> dead, the victim would be dead.

(*Id.* at 29). However, Elizardo told a different story when called to testify for the defense at trial.

Elizardo denied being interviewed by McNulty, giving a statement to the police, or telling anyone

that he had pulled petitioner off of Flores. (*Id.* at 42). In fact, Elizardo now claimed that Jesse

Casillas, who died shortly before trial, was the only member of the Casillas family present when the

attack occurred. (*Id.* at 46). On cross-examination, Elizardo testified that he recognized his

signature on the back of the petitioner's photograph, but could not recall viewing a photo line-up or

signing the picture. (*Id.* at 49-50). The prosecutor also asked Elizardo about an affidavit he gave

to defense counsel prior to trial. Elizardo did not remember who prepared the document or where

it was signed, but said that petitioner's nephew, Frank Casillas, was present when he executed the

-4-

affidavit. (*Id.* at 53-54). Still, Elizardo denied being pressured or coerced to sign the affidavit or

testify for the defense. (*Id.* at 55).

In her closing argument, the prosecutor offered this explanation of why Elizardo may have

changed his story:

> Don't disrespect George Casillas. Really, that's a lesson to be learned
> in this trial. It's a lesson that Juan Flores learned that night, and
> apparently Michael Elizardo has been taught that as well, because it
> has to be obvious to every single one of you what happened when
> Michael Elizardo came in here to testify. There is no way that he's
> putting his life on the line to testify against George Casillas. No way.
>
> I don't care what I told the police officer. I don't care that I signed a
> lineup saying it was George Casillas that I saw fighting and hitting
> Juan Flores. I don't care if you bring the police officer, Juan Flores,
> and anybody else here to say that I said that, I'm not saying it today.
> There's no way he's going to do that. In fact, he's going to go down
> and sign an affidavit that's full of lies, as well. Sure, I may go to jail
> for perjury, for lying but I'll be alive. He knows George Casillas, and
> he knows Frank Casillas, and he knows all the Casillases, Jesse and
> all of them that lived in the neighborhood. Guess what? The only
> person he's going to say that he saw the night that Juan Flores got
> stabbed is the one that's not here, the one that can't hurt him, the one
> that's dead, the one that can't be charged.

(*Id.* at 81-82). Petitioner contends that this argument was highly prejudicial and based on matters

outside the record. To the contrary, the prosecutor fairly summarized the conflicting evidence

presented at trial and asked the jury to make reasonable deductions from that evidence. Elizardo's

inability to explain the many inconsistences between his testimony and that of McNulty, together

with evidence that petitioner had a "pretty bad" reputation, (*see id*. at 26), permitted the prosecutor

to argue that Elizardo changed his story out of fear for his life. *See Coble v. State*, 871 S.W.2d 192,

204 (Tex. Crim. App. 1993), *cert. denied*, 115 S.Ct. 101 (1994) (prosecutor allowed to ask the jury

to make reasonable deductions from the evidence).  This ground for relief should be overruled.[1]

C.

Petitioner further argues that hearsay evidence was used to bolster the state's case against

him.  At issue are extra-judicial statements made by Flores and Elizardo, as well as a police report

and medical records referenced by McNulty and Flores in their trial testimony.  This claim fails for

two reasons.  First, the misapplication of state procedural rules is not cognizable in a federal habeas

proceeding unless the petitioner can establish that the error deprived him of a fair trial.  *See Evans*

*v. Thigpen*, 809 F.2d 239, 242 (5th Cir.), *cert. denied*, 107 S.Ct. 3278 (1987); *Mattheson v. King*,

751 F.2d 1432, 1445 (5th Cir. 1985), *cert. dism'd*, 106 S.Ct. 1798 (1986).  Other than the conclusory

assertion that the admission of hearsay evidence deprived him of the right to face his accusers, (*see*

Hab. Pet. at 7, ¶ B), petitioner offers no argument, much less proof, of a federal constitutional

violation.  *See Saunders v. Cockrell*, No. 3-02-CV-0229-D, 2002 WL 31156719 at *2 (N.D. Tex.

Sept. 24, 2002), *citing Lucas v. Johnson*, 132 F.3d 1069, 1082 (5th Cir.), *cert. dism'd*, 119 S.Ct. 4

(1998) (habeas relief warranted only when erroneous admission of evidence played a "crucial, critical

[and] highly significant role" in trial).

Second, none of this evidence is hearsay.  Under Texas law, hearsay is "a statement, other

than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove*

*the truth of the matter asserted*."  TEX. R. EVID. 801(d) (emphasis added).  At trial, McNulty talked

about the statements made by Flores and Elizardo in the context of explaining how petitioner became

---

[1] Upon the conclusion of his testimony, the trial judge ordered Elizardo arrested for aggravated perjury. (SF-III at 57).  This occurred outside the presence of the jury and was not mentioned by either side during the trial.  Although the prosecutor rhetorically argued that Elizardo would have rather gone to jail for perjury than testify against petitioner, her argument was a reasonable deduction drawn from the evidence.  At no time did the prosecutor inform the jury that Elizardo had been arrested and charged with perjury.

a suspect in his investigation. (SF-III at 16-17, 18-21). *See Stuart v. State*, No. 04-04-00898-CR, 2006 WL 1080242 at *1 (Tex. App.--San Antonio, Apr. 26, 2006, pet. ref'd) (citing cases) ("Police officers may testify how an investigation began and the course of events leading to a defendant's arrest."). He used the police report to refresh his recollection while testifying. (*Id.* at 23-26, 30-31). *See Baker v. State,* 177 S.W.3d 113, 123 (Tex. App.--Houston [1st Dist.], 2005, no pet.) (law enforcement officer may use otherwise inadmissible police report to refresh his recollection and then testify in open court from his refreshed memory). Although the prosecutor showed Flores a copy of his medical records, she did not inquire as to the contents of those records. (SF-II at 132). It was defense counsel, not the prosecutor, who questioned Flores about specific entries contained in the medical records. This was done to show that Flores had alcohol in his system and may have been intoxicated at the time of the attack, thus causing the jury to question Flores' ability to remember any statements made by his assailant. (*See id.* at 146-47, 166). Monica Gomez, who is married to Flores, testified that her husband identified a man named George Casillas as his attacker. (*Id.* at 174). Because Flores testified at trial and was subject to cross-examination, his statement to Gomez was admissible as "one of identification of a person made after perceiving the person." TEX. R. EVID. 801(e)(1)(C). *See also Rodriguez v. State*, 975 S.W.2d 667, 682-83 (Tex. App.--Texarkana 1998, pet. ref'd). In sum, petitioner has failed to show that the police report, medical records, or any of the out-of-court statements made by Flores and Elizardo constitute inadmissible hearsay. This ground for relief is without merit and should be overruled.

D.

Next, petitioner complains that the trial court instructed the jury that its verdict must be unanimous, but never disclosed that the failure to reach a unanimous verdict would result in a

-7-

mistrial. This claim borders on frivolous. As required by Texas law, the jury was instructed that "[y]our verdict must be unanimous and shall be arrived at by due deliberation and not by majority vote or by any method of chance." (St. App. Tr. at 13). *See also* TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon 2006) ("Not less than twelve jurors can render and return a verdict in a felony case[.]"). Not only was this instruction proper, but the failure to include such an instruction in the jury charge may constitute reversible error. *See Ngo v. State*, 175 S.W.3d 738, 749 (Tex. Crim. App. 2005). To the extent petitioner argues that the trial court should have advised the jury of the consequences of not reaching a unanimous verdict, there is no federal constitutional right to such an instruction. *See Jones v. United States*, 527 U.S. 373, 381, 119 S.Ct. 2090, 2098, 144 L.Ed.2d 370 (1999) ("[T]he Eighth Amendment does not require that the jurors be instructed as to the consequences of their failure to agree.").

E.

In multiple grounds for relief, petitioner blames the trial court and his attorney for allowing the prosecutor to make an improper jury argument and introduce hearsay evidence. The court has previously determined that the prosecutor did not make an improper jury argument or rely on hearsay evidence to obtain a conviction. It therefore follows that these allegations cannot support a claim of judicial misconduct or ineffective assistance of counsel.

Petitioner further argues that his attorney should have subpoenaed two additional witnesses and failed to explore the contents of Flores' medical records. Neither claim is supported by the record. Even if Nick Lopez and Robert Lopez were willing to testify that petitioner had "prior run-ins" with Flores, (*see* Pet. Br. at 17), it is difficult to envision how such testimony would have helped the defense. Rather, this evidence would have bolstered the state's case by giving petitioner a motive

for stabbing Flores. Counsel made a sound strategic decision in not calling these witnesses. *See*

*United States v. Williams*, No. 96-182, 1999 WL 1021442 at *2 (E.D. La. Nov. 8, 1999), *citing*

*Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (noting that complaints of uncalled

witnesses are not favored on federal habeas review because, *inter alia*, the presentation of testimonial

evidence is a matter of trial strategy). Nor did petitioner's attorney neglect to explore the relevant

portions of Flores' medical records to "ascretain [sic] what foreign substances Juan Flores was

under, and refute the testimony by Flores that he had not been drinking that night[.]" (*See* Pet. Br.

at 18). On cross-examination, counsel asked Flores:

> Q.    Now, if you look at the hospital report . . . Other
> complications, and this is under your diagnosis, alcohol abuse. This
> was on the night that you were admitted.
>
> A.    I had alcohol in my system, yes. You have to say if you were
> drinking that night. I said, yes, I have.
>
> Q.    Okay.
>
> A.    That way you won't have an allergic reaction to whatever they
> give you, medicine. Yes, I have to say the truth. Yes, I was drinking
> that night. Yes. Not a lot.

(SF-II at 146; *see also id*. at 166-67). Other than this evidence, which was fully developed by

defense counsel, there is nothing in the record to support the conclusion that Flores was under the

influence of alcohol or drugs on the night of the attack.

Petitioner also criticizes his lawyer for failing to appeal his conviction on the grounds of

insufficient evidence and the errors raised in his federal writ. The evidence was more than sufficient

to enable the jury to conclude that petitioner was the person who attacked Flores. Although

conflicting evidence was presented at trial, it was well within the province of the jury to resolve

those conflicts and determine the credibility of witnesses. *See United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994) ("All credibility determinations and reasonable inferences are to be resolved in favor of the jury's verdict."). There is no reason to believe that the state appeals court would have found the evidence insufficient to support petitioner's conviction. Likewise, it is unlikely that the appeals court would have been persuaded by any of the claims raised by petitioner in his federal writ --the same claims that have been soundly rejected by this court. These grounds for relief are without merit and should be overruled.

F.

Finally, petitioner asserts a number of errors related to the disposition of his state writ. The Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir.), *cert. denied*, 122 S.Ct. 477 (2001) (citing cases). "That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Id.* at 320, *citing Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 2559 (1996). Consequently, these grounds for relief should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon

-10-

grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   April 18, 2007.


JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE